# SUPREME COURT.

PETER HAVERMANS and others agt. THE CITY OF TROY.

*Regularity in proceedings to open streets and avenues in the city of Troy.*

The charter of the city of Troy, in reference to opening and widening streets and avenues, does not prescribe with what particularity the route of the proposed street or avenue shall be described. A description given in the petition to the common council for laying out Madison avenue was as follows: "Commencing at the east end of Madison street, as laid down on the city map, and then extending easterly to a point on the Hollow road, at or near the residence of Michael Grady."

*Held,* that this description would be likely to locate, with reasonable certainty, the proposed avenue, so that the route could be understood, which is all the charter required, and was sufficient.

Where the common council had approved of the veto of the mayor of such proceedings, it did not terminate the proceedings so as to require a new petition, where, at the same meeting, the route of the avenue was somewhat changed, but not in such a glaring and flagrant departure from the route designated in the petition and notice as to deprive the common council of jurisdiction in the matter.

Such proceedings are not fatally defective, in consequence of the omission by the committee appointed by the common council to negotiate for the land to make application to each land owner whose land was to be taken for the avenue, where the committee had reported to the common council their inability to agree with some of the land owners to negotiate or sell their land, upon which report the common council proceeded to apply for the appointment of commissioners of estimate and assessment of damages, &c., as the application for a commission did not prevent further negotiation for the land of those who were willing to sell; and it would not, even after the appointment of commissioners.

It is no objection to such proceedings that the proposed route of the avenue takes in a small portion of a farm belonging to the county, and occupied for county purposes, where such farm will not be rendered less valuable thereby.

*Special Term at Chambers, Troy, February,* 13, 1875.

MOTION to dissolve an injunction, and also for the appoint-ment of commissioners, &c.

*R. A. Parmenter*, city attorney, and *James Lansing*, for motion.

*E. Cowen & C. E. Patterson*, opposed.

INGALLS, *J.* — The proceedings in laying out Madison avenue are not assailed on the ground of fraud or collusion, but for certain alleged irregularities in the proceedings which are claimed by the plaintiffs to render them void. This motion does not involve a consideration of the merits of the enterprise, whether it will be advantageous or not. It is the province of the common council and the local assessors to determine that question. I shall, therefore, only consider the legal questions which are presented.

The plaintiffs insist that the petition which was presented to the common council and the notice published after its pre-sentation were fatally defective, because they neither contain a description of the route of the proposed avenue with the degree of particularity which the charter contemplates and requires. The description is as follows: "Commencing at the east end of Madison street, as laid down in the city map, and then extending easterly to a point on the Hollow road, at or near the residence of Michael Grady."

· The second section of title 4 of the charter provides as follows:

"Whenever a petition for opening or widening any street, alley, road or avenue in said city, signed by a sufficient num-ber of persons to warrant the improvement, shall be presented to the common council, the said common council shall cause a notice to be published in the official paper or papers of the city once a week for not less than three weeks successively that such application has been made and the time, which shall not be less than twenty days after the first publication

of such notice, when they will proceed on said petition. Before giving notice of the pendency of such application the said local assessors shall fix the limit or district of assessment, beyond which the assessment shall not extend; and a description of such limit or district shall be inserted in and form a part of such notice."

It will·be perceived that this provision of the charter does not prescribe with what particularity the route of the proposed avenue shall be described. It requires that a petition subscribed by a sufficient number of persons to warrant the improvement shall be presented to the common council, and there is no pretense but that, in this particular, the petition was sufficient. The object of the. petition is obviously to bring the proposed improvement to the attention of the common council, and the route should be defined with reasonable certainty to enable such body to understand the location of the proposed avenue so as to determine the propriety thereof. It is apparent, from the statute, that the utmost precision in describing the route was not contemplated. No survey is required, and, indeed, the charter is wholly silent in regard to the description of the route which the petition should contain. Hence, it becomes a question of construction whether the description is such as would be likely to locate, with reasonable certainty, the proposed avenue, so that the route could be understood with a view to the action which the common council, by the charter, is required to take in such a proceeding. I think the description sufficient to answer the purpose intended. It enabled the common council to determine the location of the proposed avenue with sufficient certainty to guide its subsequent proceedings; and there is nothing to show that any embarrassment has been experienced in consequence of the want of a more particular description of the route (*Hallock* agt. *Woolsey*, 23 *Wend.*, 329; *The People* agt. *Taylor*, 34 *Barb.*, 481; *The People* agt. *Comrs. of Highways of Milton*, 37 *N. Y.*, 360).

It is further insisted that when the common council approved

the veto of the mayor in regard to the avenue the proceedings terminated, and without a new petition that body was not authorized to take any further action in relation thereto. It appears that after the approval of such veto, and at the same meeting, the route of the proposed avenue was in some respects changed, although not varying essentially its general direction, as appears quite clearly by the papers and the map presented upon this motion. Such change seems to have been made with a view to decrease the expense of the work by improving the route in regard to the excavations and fillings which would be required. The change does not seem to be of a nature or extent which should be regarded as the abandonment of the general route designated in the petition and notice, and the substitution of an entirely new route. Nor is the change, in my judgment, so radical as to amount to the abandonment of the proceedings instituted by the petition. It is quite apparent, from the provision of the charter, to which we have referred, that it was not the intention of the law-makers to prohibit the making of changes in the route of a proposed avenue, when it could be improved thereby, or rendered less expensive, provided such changes did not amount to the adoption of an entirely new route. This view seems in harmony with the decisions to which we have referred. The reasoning of judge NELSON, in *Hallock* agt. *Woolsey* (23 *Wend.*, 329), applies with force to the question we are considering. The learned judge remarks: "We do not say but the departure of the judges or commissioners from the general route upon which they are called to act may be *so glaring and flagrant* as to warrant the court in holding that they had exceeded their jurisdiction, but we are not to presume this much from the mere offer to show a variation. The extravagance of the departure should be shown, and to be of such a character that the court would be compelled to regard the proceeding in the same light as if those officers had laid out the road in the absence of the preliminary steps required by the statute."

In my judgment, the facts developed on this motion fall far

short of showing such a glaring and flagrant departure from the route designated by the petition and notice as to deprive the common council of jurisdiction in the matter. If not, their action in adopting the route with the changes which were made must be regarded as perfecting and carrying out, under the charter, the proceedings initiated by the presentation of the original petition. It would seem an unnecessarily rigid rule to hold that the common council had not the power to depart, in any particular, from a route indicated by a petition. *In the Matter of Opening House Avenue* the court held that it was competent to abandon a portion of the route, and that, too, after commissioners were appointed to estimate the damages. And further, that after such change it was the duty of the common council to appoint a committee to negotiate for the purchase of the land. This decision seems to bear directly upon the question whether a change in a route of an avenue has the effect to discharge the proceedings. The decision in that case assumes, necessarily, the position that the proceedings continue, and jurisdiction is retained by the common council (*see, also, The People* agt. *Taylor*, 39 *Barb.*, 481).

The common council having acquired jurisdiction of the matter by the presentation of the petition, the same was retained until the proceedings were formally discharged, or such jurisdiction became terminated by some flagrant irregularity or omission; neither of which has occurred in this matter. In the absence of fraud a proceeding should not be declared void simply because we may differ with a public body in regard to the precise manner a duty should be discharged, when the performance of such duty involves rather form than substance, and especially so when there is a discretion to exercise. Doubtless, a route established by accurate survey, rendering the same mathematically certain, would, to many minds, be preferable, but no such particularity is required or contemplated by the charter. The charter emanated from the law-making power, where the authority rests

to prescribe the manner and under what circumstances private property shall be devoted to public purposes, and jurisdiction is acquired and preserved by those executing the statute so long as the requirements are observed with reason and discretion (*The People* agt. *Smith*, 21 *N. Y.*, 595).

It is further insisted that the proceedings are fatally defective in consequence of the omission by the committee appointed by the common council to negotiate for the land, to so apply to each land owner whose land was to be taken for said avenue. It appears that the committee did not apply to all of such land owners, but it does appear that they did apply to one of such owners, who refused to negotiate or sell, and thereupon the committee reported to the common council such failure and inability to agree. And the common council, by resolulution, directed the city attorney to apply for the appointment of commissioners to estimate the expense of the improvement, and the amount of damages to be sustained by the owners of the land and the buildings to be taken.

The said second section provides as follows: "If the common council shall deem it proper to permit such improvement to be made, they shall so decide by resolution, and appoint a committee to negotiate for the lands required for said improvement; and if a purchase of the land is made, the sum agreed upon to be paid therefor shall be assessed upon the property benefited, according to the provisions of this title. If they cannot agree, they shall so report, &c."

The committee reported to the common council that they could not agree with the owners of the land for the purchase thereof. Thereupon the common council adopted the resolution directing the city attorney to apply for the appointment of commissioners. The question presented is, whether the omission by the committee to negotiate with every land owner rendered the proceedings irregular and void. While it seems to have been the intention of the legislature to favor the procuring of the land for such purpose by purchase, rather than by commission, yet when, by the report of the committee,

Havermans agt. City of Troy.

it appeared that the land required could not be procured by purchase, I am of opinion that it was competent for the common council to act upon the report and apply for the appointment of commissioners. In case there is a failure to purchase the most inconsiderable portion of the land, a commission is indispensable. No other course can be pursued. The fact is undisputed that at least one landowner absolutely refused to sell his land, or even to negotiate. Such refusal being reported to the common council, authorized the appointment of commissioners. I do not think it necessarily follows that the application for a commission prevents further negotiation for the land of those who are willing to sell. Indeed, it was decided in *The House Avenue Case*, to which we have referred, that even after the appointment of commissioners it was proper to procure the land by purchase and abandon the commission. It must be remembered that the commissioners have a two-fold duty to perform: 1st. To estimate the expense of the improvement. 2d. The amount of damages to be sustained by the owners of the land. In case all the land required for any such improvement can be procured by agreement, I infer from the provisions of the charter that the expense of the improvement may be estimated by a committee instead of by commissioners. While it would seem more satisfactory for the committee to apply to each landowner, and report to the common council the result of the negotiation before any further action should be taken by that body, yet I do not think that course indispensable. The charter does not, in terms, require it, nor do I discover that the rights of any party would be likely to be prejudiced by such omission.

All that the charter required in this particular seems to have been substantially observed, and the jurisdiction of the common council preserved. The question is not whether the proceedings have not been conducted in the most judicious manner, but whether jurisdiction has been lost in consequence of neglect or mismanagement. When this question was presented upon the argument, my mind was impressed with the.

conviction that the neglect to negotiate with each land owner presented a serious obstacle to the application for the appointment of commissioners, but further examination and reflection have convinced me that it is much less formidable than it first appeared. It will be observed that, by the said second section of the charter, each land owner receives notice of the appointment of commissioners — those residing in the city personally, others by mail. In the course of the proceedings the avenue is accurately surveyed and described, and so far as the facts appear upon this motion, the location thereof seems to have been well understood, and no mistake or surprise is pretended.

It is further insisted that it is unauthorized and unlawful to appropriate for another public use any portion of the farm owned by the county of Rensselaer and devoted to the care of the poor of the county. It appears that but a small portion of said farm, and that, too, upon the north bounds thereof, is proposed to be taken, and that such farm will not be rendered less valuable or useful for the purpose to which it is devoted. We have been referred to the case *In the Matter of the Boston and Albany R. R. Co.* (53 *N. Y.*, 575). That case does not establish any principle which, in my judgment, interferes with the right to take the land. We are not unmindful of the fact that these proceedings involve the taking of private property for a public purpose, and therefore the statute must be strictly followed, yet that injunction should be obeyed with reason. A rule of construction is well stated by the court in *Hart* agt. *Cleis* (8 *Johns.*, 41), as follows: "It is the duty of courts so to construe statutes as to meet the mischief and advance the remedy, and not to violate fundamental principles." If courts should be diligent to discover, and disposed to magnify defects in proceedings of this nature, and adopt a severe and technical rule of construction, very few such proceedings could be sustained. Such, however, is not the practice.

I conclude that there are no irregularities in the proceedings which render them inoperative and void. The injunction

Havermans agt. City of Troy.

must be dissolved and the application for the appointment of commissioners sustained. It will become the duty of the local assessors to determine, upon the merits, whether the avenue will be of sufficient value and advantage as a public work to justify the expense of its establishment.

Decision affirmed at General Term.